## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PATRICIA CLEARY                        **:**
                                   **:**
    v.               **:**
                                   **:**    Civil Action No. CCB-07-1202
CPL. J. L. GREEN, *et al*.             **:**
                                   **:**

...o0o...

## MEMORANDUM

Now pending before the court is a motion to dismiss filed by defendants State of Maryland ("State"), Maryland State Police ("MSP"), and Cpl. J.L. Green ("Cpl. Green") against plaintiff Patricia Cleary ("Cleary"). Cleary asserts numerous constitutional, both federal and state, and common law claims against the defendants relating to the arrest of Cleary by Cpl. Green on May 20, 2004. In response, the defendants filed this motion to dismiss on the grounds that Cpl. Green, the State, and the MSP are immune from suit, the plaintiff has failed to state claims upon which relief can be granted, and the State and the MSP are not liable under § 1983. The issues in this motion have been fully briefed and no hearing is necessary. For the reasons stated below, the defendants' motion will be granted in part and denied in part.

## BACKGROUND

Because the court is considering a motion to dismiss, the factual background of the case is taken entirely from Cleary's complaint. On March 20, 2004, Cleary was sleeping in the front passenger seat of a vehicle operated by her companion, Ronald Rada, when the vehicle was pulled over by Cpl. Green. (Complaint at ¶¶ 4-5.) As Cleary continued to sleep, Rada was ordered to exit the vehicle and was subsequently arrested. (*Id.* at ¶ 8.) Cpl. Green then approached the vehicle and "vehemently instructed" Cleary to exit the car in order for him to

1

conduct a search.  (*Id.* at ¶ 9.)  Cleary, "upset and intimidated by the actions and behavior of Defendant Green, and/or other MSP officers present at the scene of the police stop, refused to exit her vehicle, and vocally expressed her disconcertion [sic] with Defendant Green."  (*Id.* at ¶ 11.)  Cpl. Green responded by removing Cleary from inside the vehicle and "forcibly pushed [Cleary's] back against the vehicle before turning her around and violently slamming the front of her body into the vehicle on two separate occasions."  (*Id.* at ¶ 12.)  Cleary alleges that as a result of the incident, she sustained "substantial and potentially permanent injuries to her body, including, but not limited to, numerous bruises, hemorrhages, broken bones, cuts and abrasions." (*Id.* at ¶ 41.)  Cleary was then arrested and charged with failing to obey a police officer.  (*Id.* at ¶ 14.)

        According to Cleary, no drugs or other illegal substances were ever found in her vehicle. (*Id.* at ¶ 15.)  Cleary's trial on the failure to obey an officer charge, scheduled for June 30, 2004, was postponed and stetted upon motion from the State's Attorney.  (*Id.* at ¶ 18.)  Cleary now alleges that Cpl. Green, acting under color and pretense of law, inflicted physical, mental and emotional damage and injury upon her, including "Post Traumatic Stress Disorder" "as a result of the malicious and violent physical attack" by Cpl. Green.  (*Id.* at ¶¶ 20, 23, 53.)  Cleary further asserts that by failing to punish Cpl. Green, the State and MSP "did enforce a custom, policy, and/or procedure upon [Cleary] that was unconstitutional and inflicted injury upon her for which MSP and the State are liable."  (*Id.* at ¶ 24.)

## **ANALYSIS**

2

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint must "in light of the nature of the action . . . sufficiently allege[] each element of the cause of action so as to inform the opposing party of the claim and its general basis." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005).  Following the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (quoted in *Goodman v. Praxair*, 494 F.3d 458, 466 (4th Cir. 2007)).  Moreover, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65.

Although Cleary's complaint is hardly a model of clarity, at the core of her argument, she appears to be asserting excessive force, false arrest/imprisonment, and First Amendment infringement claims under 42 U.S.C. § 1983, the Maryland Declaration of Rights, and Maryland common law.  Cleary further asserts an intentional infliction of emotional distress claim under

the common law.  Apart from the excessive force and possibly the emotional distress claims, it is

a close call as to whether these other theories should survive this motion to dismiss.  Because the

case will proceed, however, based at least in part on the viability of the excessive force claim,

many factual and immunity issues may be clarified through discovery, and subsequently

reconsidered at a later stage in this litigation.  Accordingly, it is appropriate to deny those

aspects of the motion to dismiss without prejudice.  Nevertheless, because the State and MSP

defendants are not "persons" under § 1983, and because Cleary has failed to allege sufficiently

that the State and MSP defendants established an official policy or custom that promotes or

condones Cpl. Green's conduct, as further explained below, these defendants will be dismissed

as to these claims.

<u>*The State and MSP Defendants*</u>

Section 1983 establishes liability for "every person" who, under the color of law,

deprives an individual of any rights, privileges, or immunities secured by the Constitution.  The

Supreme Court in *Will v. Michigan Dep't of State Police* held that a State is not a "person" under

the statute, and therefore not subject to liability.  491 U.S. 58, 71 (1989).  Cleary erroneously

relies upon *Della Grotta v. Rhode Island*, 781 F.2d 343, 349 (1st Cir. 1986), which was

subsequently abrogated by *Will*, in asserting that a State that has voluntarily waived its Eleventh

Amendment immunity in federal court may be deemed a "person" under § 1983.  (Pl.'s Opp.

Mem. at 13.)  Even assuming that a State has waived its Eleventh Amendment immunity in

federal court, the Supreme Court noted in *Lapides v. Bd. of Regents* that such a waiver does not

alter the fact that "a State is not a 'person' against whom a § 1983 claim for money damages

might be asserted."  535 U.S. 613, 617-18 (2002) (citing *Will*, 491 U.S. at 66).  Therefore,

Cleary's federal claims brought against the State and the MSP under § 1983 will be dismissed.[1]

In addition to the § 1983 claim, Cleary asserts numerous claims under the Maryland constitution and common law against the State and MSP defendants. Cleary argues that by removing this case from state court to federal court, the defendants have waived their Eleventh Amendment immunity from suit. (Pl.'s Opp. Mem. at 14.) Supporting Cleary's argument, the Supreme Court in *Lapides* found that "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Lapides*, 535 U.S. at 619. Thus, in *Lapides*, the Court held that where a State had already waived its immunity from state-court proceedings, it could not then voluntarily remove the case to federal court and regain immunity from suit under the Eleventh Amendment. *Id.* at 624.

The state defendants argue that, unlike *Lapides*, where the state of Georgia had already waived its immunity in state court, the defendants here have not waived their underlying sovereign immunity. (Def.'s Reply Mem. at 9.) They rely upon *Stewart v. North Carolina*, where the Fourth Circuit distinguished *Lapides* on the grounds that North Carolina, despite voluntarily removing an action to federal court, had not already consented to suit in its own courts. 393 F.3d 484, 490 (4th Cir. 2005). Thus, as the *Stewart* court makes clear, there is a distinction between a State voluntarily removing a case to federal court, thereby waiving its

---

[1] For the purposes of § 1983, Cleary appears to concede that the MSP is a state agency or arm of the State. *See Johnson v. Maryland State Police*, 331 Md. 285 (1991) (finding the MSP to be the equivalent of the State of Maryland under the Maryland Tort Claims Act). Therefore, because the MSP is a state agency, both the State and the MSP are not "persons" under § 1983. *Will*, 491 U.S. at 67.

Eleventh Amendment immunity to suit in federal court, and a State not waiving its underlying sovereign immunity against state-based claims by removal, because that immunity would still be applicable in state court.

Without needing to determine whether this case falls closer to *Stewart* or *Lapides*, the court finds that Cleary's direct claims under the Maryland constitution and common law against the state defendants cannot survive a Rule 12(b)(6) motion.  Cleary's constitutional and tort theories against the state defendants are predicated upon their enforcement of a "custom, policy, and/or procedure" that caused direct injury to Cleary.[2]  (Complaint at ¶¶ 24, 30, 35, 43, 55.) Cleary, however, fails to identify any basis for concluding that the state defendants had a uniform custom, policy, or procedure that Cpl. Green followed in allegedly harming Cleary. Instead, Cleary's complaint identifies a single incident, and then baldly alleges State and MSP wrongdoing without providing any supporting factual allegations.

In attempting to clarify her complaint, Cleary argues in conclusory fashion that the state defendants perpetuated an official policy or custom that promoted or condoned Cpl. Green's actions by failing to find him at fault following the incident.  (Pl.'s Opp. Mem. at 12.)  More specifically, Cleary first asserts that by denying her tort claim filed with the State Treasurer pursuant to the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't § 12-106(b),

---

[2] To the extent that Cleary is arguing that the state defendants are vicariously liable for the actions of Cpl. Green, Md. Code Ann., Cts. & Jud. Proc. § 5-522(a)(4) establishes that the immunity of the State is not waived for any tortious act or omission of state personnel that is committed with malice or gross negligence.  Thus, where Cleary asserts claims against Cpl. Green that require proof of a malice element (Pl.'s Opp. Mem. at 8-11), the state defendants would be immune from suit.  *See Hines v. French*, 157 Md. App. 536, 573-74 (Md. Ct. Spec. App. 2004).  However, where Cleary is not required to prove malice, her vicarious liability claims against the state defendants under the MTCA survive this motion to dismiss.

the State of Maryland condoned Cpl. Green's actions.  (*Id.*)  Second, Cleary argues that by

failing to punish Cpl. Green, the MSP further condoned Cpl. Green's behavior.  (*Id.*)

The MTCA requires a plaintiff to submit a written claim to the State Treasurer, or his

designee, within one year after injury in order to pursue a claim against the State.  Md. Code

Ann., State Gov't § 12-106(b).  Until a plaintiff has exhausted his administrative remedies, the

State does not waive sovereign immunity, and the courts will dismiss the premature suit.  *See*

*Rivera v. Prince George's County Health Dep't*, 102 Md. App. 456, 471 (1994).  Here, Cleary

pursued her claim under the MTCA, and was denied relief.  By exhausting the administrative

review mechanism, Cleary was able to avail herself of this lawsuit.  In no way, however, does

properly pursuing a claim under the MTCA, and receiving an adverse decision, establish a viable

theory that the State condones or promotes allegedly wrongful conduct.  To the contrary, the

MTCA administrative review mechanism is one of the means by which a plaintiff is able to

secure a State's waiver of its sovereign immunity in a subsequent trial.

Cleary further fails to offer any facts that would support her argument concerning the

MSP's alleged condonation of Cpl. Green's actions.  In order to assert a claim that a State actor

has promoted a wrongful custom or policy or condoned illegal behavior, the plaintiff must allege

some proof of an official policy or widespread official indifference towards abuses.  *See e.g.*

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (stating that under § 1983 to establish

supervisory liability of a named decisionmaker there must be evidence of indifference to

widespread wrongful conduct).  Here, Cleary has not alleged sufficient facts to establish that the

State or MSP endorsed a wrongful custom or policy.  In fact, aside from her arrest, Cleary has

offered no other evidence of police misconduct that would establish an official policy or

7

condonation of wrongful behavior.  *See Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) (finding in the § 1983 context that an alleged single incident of police misconduct is insufficient for stating a claim based on a government custom or policy).  Therefore, to the extent that Cleary fails to establish a direct claim under the state constitution or common law, the State defendants will be dismissed.

### *Cpl. Green*

Apart from the excessive force and perhaps the intentional infliction of emotional distress claims, it is questionable whether Cleary's other theories against Cpl. Green should survive this motion.[3]  However, because the complaint properly asserts a claim for excessive force, discovery on the facts related to Cleary's arrest must proceed in any event.  Further factual development will permit more careful consideration of Cleary's other claims and Cpl. Green's immunity arguments at a later date.[4]  Therefore, Cpl. Green's motion to dismiss will be denied.

A separate order follows.

---

[3] Other than excessive force, it is difficult to see how Cleary might have been wronged by Cpl. Green.  Following an arrest in or near an automobile, the police have clear authority to search the interior passenger compartment of the vehicle.  *New York v. Belton*, 453 U.S. 454 (1981).  Furthermore, pursuant to *Maryland v. Wilson*, the police have the authority to order a passenger out of a vehicle during a routine traffic stop.  519 U.S. 408 (1997).  Therefore, because a failure to obey a police order to exit an automobile would likely provide sufficient probable cause to support an arrest, Cleary may have a difficult time supporting her wrongful arrest and First Amendment claims.

[4] As to Cpl. Green's argument that he is entitled to immunity, Cleary's factual allegations raise the possibility that he acted with malice and therefore would not be entitled to immunity. Dismissal is not warranted at this time.

___November 15, 2007___                              _____/s/_____
Date                                                                Catherine C. Blake
                                                                    United States District Judge